The sole question in this case is, whether Andrew H. Newcomb, who died intestate, had an estate or interest in the land in controversy which descended to his heirs at law. The premises constitute a part of the Onondaga salt springs reservation, and were "set apart" by the commissioners of the land office under the statute (1 R.S., 267, § 93) enacted prior to the adoption of the constitution of 1846. *Page 620 
The 10th sec. of art. 7 of the constitution of 1821, among other things, declares that the legislature "shall never sell or dispose of the salt springs, or the lands contiguous thereto which may be necessary or convenient for their use, nor the navigable communications or any part or section thereof; but the same shall be and remain the property of this state." By this provision the legislature is prohibited, not merely from alienating the lands in fee, but from making any sale of them whether conditional or absolute; and to make the prohibition more emphatic, they are forbidden "to dispose of them." This word, in the sense in which it is used in this connection, means "to part with to another," "to put into another's power and control," "to give away or transfer by authority." The framers of the constitution did not intend to forbid any particular species of alienation. The language of that instrument is not that the legislature should transfer these lands by grant, by license irrevocable, or upon condition subsequent; but that they should not dispose of them in any manner; "but the same shall be and remain the property of this state." If, then, by the setting apart by the commissioners of the land office under the act of 1821, the decedent acquired an estate of inheritance, what he received the state must have parted with, and, to that extent, by legislative enactment disposed of the lands reserved, and they consequently thus far ceased "to be and remain the property of this state."
I agree fully with the counsel for the respondent, and with the learned judge who delivered the opinion of the supreme court, that the writing under which this claim is made is not a lease, and with the former, that if the interest, by whatever name it may be called, is not of the durable character claimed for it by the respondent, the only other alternative is, that it is held at the mere will and pleasure of the state. The language of the 93d sec. (1 R.S., 267) is exceedingly guarded; it confers no right upon the commissioners to bargain with the applicants. The *Page 621 
latter are to locate the lands, and the commissioners are to set so much of them as they shall deem reasonable for the purpose of such individual or company, apart, as such individual or company may select. There are no words pertaining to a grant of any interest whatever. It is a mere designation of the boundaries, including the whole or a part of the premises previously located by the manufacturer. It is true, that as a consequence of this location, certain things are to be performed by the applicant; but their performance does not increase his interest in the land, but is a condition upon which the location and setting apart are made to depend. There would be no impossibility in a tenant at will, in the strictest sense of the term, contracting to make permanent improvements upon the premises upon which he was about to enter, as the only condition upon which he could retain the interest, slight as it was, which he was to receive. The landlord might terminate the tenancy before, or when the improvements were made; he might not for fifty years, and the possibility would be worthless, or valuable, according to the character of the lessor for justice, fair dealing and liberality. Whether he sustained this character or the reverse of it would not, however, make the slightest difference in the legal rights of the tenant. A similar arrangement was made with the decedent as the result of the action of the commissioners under the law and the constitution. The commissioners set apart, for the purposes of the decedent, lands by him selected. The "location," in the language of the statute, was to be void, if a certain sum was not expended within one year, and the land might "be located by any other individual or company." (1 R.S., 267, § 94.) There was nothing in the "setting apart," or in the condition, to create an estate of any description. The words of the statute, so far from being usual or appropriate for that purpose, are obviously adopted to exclude any such conclusion. *Page 622 
It is not said that the estate or right of possession for a definite or indefinite period shall be void, but the "location." The naked occupancy shall, at all events, without any act upon the part of the state or its agents, absolutely cease, and the lands be deemed vacant if this condition is not complied with. If the condition is fulfilled, the setting apart shall secure the manufacturer against the location of the same premises by any other person, and his occupancy may continue for the specific purpose of manufacturing coarse salt until the state otherwise determines. In effect, the legislature say, we have no authority to sell or dispose of these lands; but they are now, and must remain the property of the state. All this is either expressly declared in the constitution, the law, and the written instrument of the commissioners, or necessarily implied from their various provisions. The decedent was bound to know that he could acquire no property in these lands, for the legislature could grant none. His heirs at law took none by descent There is nothing, therefore, to partition, and the complaint as to these lands should have been dismissed.
The judgment of the supreme court should be reversed, and the complaint as to these lands, dismissed.
Judgment reversed.